UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.    Case No. 21-cr-20610
    Hon. Mark A. Goldsmith

D-2 MIKE CHAHOUA,

    Defendant.
_____/

**OPINION & ORDER
GRANTING DEFENDANT'S MOTION TO SET ASIDE AND REVOKE THE ORDER OF
DETENTION (Dkt. 107)**

Defendant Mike Chahoua has been charged with (i) one count of conspiracy to commit wire fraud, (ii) two counts of substantive wire fraud, (iii) one count of aggravated identity theft, (iii) three counts of inducing a false statement in the acquisition of a firearm, and (iv) three counts of possessing and/or receiving a stolen firearm. Indictment (Dkt. 1). After holding a detention hearing, see Detention Hr'g Audio (Dkt. 55), the magistrate judge issued an order to detain Chahoua pending trial (Dkt. 66). Chahoua now moves to revoke this order of detention (Dkt. 107). The Government filed a response in opposition (Dkt. 112). The Court held a detention hearing on Chahoua's motion. Having reviewed the parties' briefing and the evidence presented at the detention hearing, the Court grants Chahoua's motion.

### I. BACKGROUND

The Government alleges that Chahoua was a leader in a fraud scheme that resulted in the trafficking of firearms. Indictment at 3–4. Chahoua is alleged to have obtained stolen credit card information, used that stolen information to purchase firearms online, recruited straw purchasers to pick up those firearms from local gun retailers, and then either kept the stolen guns or sold them on the black market. Id. at 4–7. The Government submits that most of the firearms that Chahoua and

his codefendants purchased as part of this scheme have yet to be recovered. Resp. at 2–3. Chahoua was personally responsible for the purchase of ten guns. Id. at 10; Mot. at 2.

Chahoua, 23 years old, submits that he has been gainfully employed since graduating high school; he worked first for Tribar Technologies, Inc., and then for his current employer, Fiat Chrysler Automobiles. Mot. at 2–3. Chahoua has demonstrated a commitment to education since at least his senior year of high school, when he earned a G.P.A. of 3.84 and completed an engineering program with the Army National Guard. See Ex. to Mot. at PageID.365–368 (Dkt. 107-1).[1] Chahoua states that he continues to pursue a career in electrical engineering, and he has attended Henry Ford Community College for approximately one year. Mot. at 5. This path aligns with Chahoua's purported intent to disassociate himself from his codefendants in this case. Id.

If released, Chahoua states that he will reside with his mother, Solange Bozoh, at his childhood home, and Bozoh will serve as Chahoua's third-party custodian. Id.

The Government identifies a few incidents in which Chahoua was involved in criminal activity. The Government represents that Chahoua was charged with "Misdemeanor Fraudulent Activities" as a minor. Resp. at 3. Chahoua explains that this charge was for shoplifting a pair of socks. Mot. at 4.

Later, while working for an airport contractor, Chahoua was charged with larceny by conversion for taking a laptop that a passenger had left behind on an airplane. Resp. at 3. Chahoua characterizes this event as his having found a laptop while working on a cleanup crew and not having turned it in. Mot. at 4. Chahoua was placed on and completed diversion for this offense. Id.; Resp. at 3.

On a separate occasion, police pulled over Chahoua and one of his codefendants in this case

---

[1] Chahoua has compiled all attachments to his motion in one filing (Dkt. 107-1). For clarity, the Court refers to this filing as "Ex. to Mot."

2

and found on his person $4,300 in cash and six different credit cards (none of which bore Chahoua's name).  Warren Police Dep't Report (Dkt. 112-2).  Chahoua told the police officers that an individual whom he met on Snapchat had provided the cards and was paying Chahoua to use them to withdraw cash.  Id.  Chahoua pled guilty to misdemeanor larceny for this offense and was placed on probation.  Resp. at 4.  This incident represents Chahoua's only prior conviction.  Mot. at 4.

In another instance, officers with the Detroit Police Department (DPD) pulled over Chahoua and recovered three guns from the car, including one gun that had been purchased as part of the fraudulent scheme alleged in the indictment.  DPD Report (Dkt. 112-3).

The Government also alleges Chahoua's involvement in a shooting that took place on Runyan Street in Detroit, Michigan, where a shooter fired multiple rounds into a house on December 7, 2020.  Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Report at 1 (Dkt. 112-4).  The gun used in this shooting was recovered from the home of one of Chahoua's codefendants in this case, Chauncey Williams.  Id. at 2.  The resident of the house at which the shooting occurred told police that she believed the shooting related to relationship problems between her grandson and her grandson's girlfriend (known as "AP"), and ATF agents had reason to believe that AP was in a relationship with Chahoua.  Id. at 1.  On the day of the shooting, Chahoua texted Williams that someone had pulled a gun on him, and he arranged to meet up with Williams.  Id. at 10.  Chahoua confirms that the person who had pulled a gun on him was the former boyfriend of Chahoua's girlfriend.  Mot. at 8–9.  Approximately an hour after Chahoua's text, Williams shared a GPS location within about 0.6 miles of the address where the Runyan Street shooting occurred.  ATF Report at 6.  Later that day, Chahoua shared an image of a window blind with a bullet hole in it.  Id. at 9.  Williams later texted Chahoua: "mike you hit that boy['s] grandma['s] house," and, "we said the car."  Id. at 10.  Chahoua responded, "That was u."  Id.  Chahoua's counsel shares his understanding on

information and belief that Williams was the one who fired the gun. Mot. at 9.[2]

Chahoua submits that he has been cooperative with federal law enforcement during the investigation for this case; he stayed in contact with the ATF case agent for this matter between the May 2021 search of his residence and his September 2021 arrest, and on the day of his arrest, he informed the agent of his location and surrendered voluntarily. Mot. at 3.

## II. ANALYSIS

When a magistrate judge issues a detention order pursuant to 18 U.S.C. § 3142, a defendant may request that the order be reviewed by the district court. 18 U.S.C. § 3145(b). The district judge reviews the magistrate judge's detention order de novo. United States v. Romans, No. 00-5456, 2000 WL 658042, at *1 (6th Cir. May 9, 2000).

"The default position of the law . . . is that a defendant should be released pending trial." United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010). "If . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). To make this determination, a court consults the factors set forth in § 3142(g): (i) the nature and circumstances of the offense charged, (ii) the weight of the evidence against the defendant, (iii) the history and characteristics of the defendant, and (iv) the nature and seriousness of the danger that the defendant's release would pose to any person or the community.

The Government bears the burden of establishing that no series of conditions is sufficient to negate the risk of the accused's flight or dangerousness: by a preponderance of the evidence in the

---

[2] Williams was released on a $10,000 unsecured bond in this case with certain conditions. Detention Hr'g Audio at 22:50.

case of flight, and by clear and convincing evidence in the case of dangerousness. United States v. Hinton, 113 F. App'x 76, 77 (6th Cir. 2004).

The Government does not argue that Chahoua is a flight risk. See Resp.; Detention Hr'g Audio at 46:55–47:15. The Court thus considers each of the § 3142(g) factors to determine whether the Government has shown by clear and convincing evidence that no set of conditions can reasonably mitigate Chahoua's dangerousness to assure the safety of the community. The Court finds that the Government has not met this burden.

### A. The Nature and Circumstances of the Offenses Charged Against Chahoua

Certainly the crimes charged against Chahoua are serious. The Government alleges that Chahoua was a leader in a scheme to use stolen credit card information to purchase guns online and then traffick them onto the black market using straw purchasers. Indictment at 3–7. The Government has expressed a concern that many of the guns allegedly purchased as a part of this scheme have not yet been recovered. Resp. at 10. Chahoua was also allegedly personally responsible for purchasing 10 of the 40 guns purchased as part of the scheme. Id. at 2, 10. The alleged sale of illegal firearms is likely to have caused a risk of harm in the past and to continue to cause a risk of harm in the future.

The Government submits that even home confinement would not mitigate the risk that Chahoua would refrain from these alleged acts if released because Chahoua allegedly committed these crimes by using the internet. Resp. at 10. The Government charges that Chahoua and his codefendants purchased stolen credit card information online, placed orders for firearms online, and recruited straw purchasers to physically pick up the purchased firearms. Indictment at 5–6. The Court agrees that home confinement does not entirely eliminate the risk that Chahoua would continue to engage in these internet-based crimes. Chahoua's planned residence in his childhood home with his mother—presumably a good influence—would provide a setting where Chahoua is able to distance himself from these activities. See Mot. at 5. However, given the seriousness of the offenses charged and the risk that Chahoua might engage in these offenses even on home confinement, this factor weighs in favor of denying Chahoua's motion.

### B. The Weight of the Evidence Against Chahoua

Section 3142(g)(2) considers "the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." Stone, 608 F.3d at 948. The Government has presented evidence that Chahoua engaged in identify theft and gun trafficking. Gun trafficking in particular poses in a physical danger to members of Chahoua's community, though Chahoua is not charged with personally committing any violent crimes like brandishing or discharging a gun.

The Government cannot point to an extensive history of Chahoua's involvement with these dangerous acts, though his recent past has blemishes. While in the company of his codefendants in this case, Chahoua was found carrying credit cards that had apparently been stolen, see Warren Police Dep't Report, and he was found with firearms including a gun purchased in relation to the scheme alleged in the indictment, DPD Report. Carrying a gun is a dangerous activity, and this fact hurts Chahoua's cause. However, these incidents also fall short of establishing that Chahoua is an inveterate criminal with a long history of causing danger to those around him.

The Government focuses on Chahoua's alleged involvement in the December 2020 Runyon Street shooting, arguing that it is "clear that Chahoua had used Williams' gun to shoot into a house on Runyon Street in retaliation for an incident involving the homeowner's grandson and Chahoua's girlfriend" and concluding that "Chahoua can not only readily access guns when he wants to, but also [] he is willing to use them for violence." Resp. at 13. The evidence, however, is not clear that Chahoua was the individual who fired Williams's gun.

The Government relies most heavily on the exchange of text messages in which Williams said to Chahoua, "mike you hit that boy['s] grandma['s] house," and, "we said the car," Resp. at 8 (citing ATF Report)—apparently accusing Chahoua of having fired the gun into the house of the grandmother of Chahoua's girlfriend's former boyfriend, rather than firing the gun at a vehicle as planned. The Government, however, chose not to include Chahoua's response to Williams's text: "That was u." ATF Report at 10. Chahoua's response can reasonably be read as Chahoua's denial of having fired into the house on Runyon Street and his accusation that Williams committed the act. With the evidence in equipoise on this specific allegation, the Government has not demonstrated by

clear and convincing evidence that Chahoua personally fired the firearm, which allegation is the basis for the Government's argument that Chahoua poses a risk of committing violent crimes in the future.

The Government has introduced some evidence indicating that Chahoua is capable of engaging in dangerous crimes, but not clear and convincing evidence that Chahoua would be a danger to other people if he were released.

### C. The History and Characteristics of Chahoua

The Government argues that Chahoua's criminal history reveals "an emerging pattern of participation in crimes involving fraud and theft," Resp. at 11, but this characterization exaggerates Chahoua's criminal background. As the Government acknowledges, Chahoua's criminal history is "not extensive." Id. Chahoua has had a few run-ins with law enforcement since he was a minor, but he has only one prior conviction: a misdemeanor larceny charge. Mot. at 4.

Other evidence reflects Chahoua's character in a more favorable light. Chahoua has been gainfully employed since he graduated high school. Id. at 2–3. He performed well in his last year of high school, see Ex. to Mot at PageID.366, since which time he has worked toward earning credits in community college, Mot. at 5. He is bilingual, which likely increases his employability. Id. He aspires to work in electrical engineering, id., and the Court has no reason to doubt that he has a future in this field. Chahoua has cooperated with ATF agents throughout the investigation, including by voluntarily providing his address and surrendering himself upon his arrest. Id. at 3. Chahoua represents that he is disassociating himself from his codefendants. Id. Chahoua's history and characteristics, therefore, weaken the Government's argument that no set of conditions can stop him from being a danger to his community.

### D. The Nature and Seriousness of the Danger that Chahoua's Release Would Pose to Any Person or the Community

The Government repeats its same arguments to insist that Chahoua's release would create a serious danger to members of his community. The Government contests that Chahoua is "responsible for shooting blindly into someone's house" because he "apparently found himself in a love triangle," Resp. at 13–14, but the Government has not proved this allegation by clear and convincing evidence.

Even if Chahoua personally represented a physical threat to other people, this particular threat could be mitigated by conditions like home confinement. The Court agrees that the crimes Chahoua allegedly committed—firearms trafficking and identity theft—are of a serious nature. However, the nature of the unproved charges against Chahoua is not sufficient to establish that no conditions of release could limit the potential danger Chahoua might represent, especially considering Chahoua's redeeming personal characteristics and the likelihood that he could correct course if confined to his childhood home.

"The default position of the law . . . is that a defendant should be released pending trial," Stone, 608 F.3d at 945, and it is the Government's burden to overcome this presumption. Having considered the § 3142(g) factors collectively, the Court finds that the Government has not provided clear and convincing evidence that no condition or combination of conditions will reasonably assure the community's safety from Chahoua if Chahoua is released.

### III.  CONCLUSION

For the foregoing reasons, Chahoua's motion for revocation of his detention order (Dkt. 107) is granted. Chahoua is released on a $10,000 unsecured bond, subject to the conditions set forth in the order setting conditions of release, which will be issued by separate entry. As specified in that order, Chahoua will be placed in the custody of his mother, Solange Bozoh. Solange Bozoh must sign and return the Agreement to Assume Custody of the Defendant via email to the undersigned's case manager, Karri Sandusky (karri_sandusky@mied.uscourts.gov), within three business days.

SO ORDERED.

Dated:  December 22, 2021       s/Mark A. Goldsmith
        Detroit, Michigan          MARK A. GOLDSMITH
                                               United States District Judge